# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DARRELL SOREY,<br><br>    Defendant. | Case No. 20-CR-4048-LTS-KEM<br><br>**REPORT AND RECOMMENDATION** |

Defendant Darrell Sorey moves to suppress evidence obtained pursuant to two search warrants, arguing that the affidavits in support of the warrants did not establish probable cause to search. Doc. 24. Defendant also requests his subsequent statements be suppressed as fruit of the poisonous tree. *Id*. The Government resists. Doc. 29. I recommend **denying** the motion to suppress.

## I. BACKGROUND

On January 12, 2020, Defendant's father, Del Sorey, died in a rollover vehicle accident in Marion County, Iowa. Doc. 24-4 at 6; Doc. 24-5 at 5. At the scene of the accident, law enforcement officers found a pipe bomb, two improvised explosive devices (IEDs) made with carbon dioxide cartridges, two semi-automatic rifles, and assorted ammunition. *Id*. They also found receipts dated a few days prior from Academy Sports in Warner Robins, Georgia, and from Walmart in Daytona Beach, Florida. *Id*.

Officers reviewed surveillance footage from the stores for the dates matching the receipts. *Id*. The footage showed that Del[1] made the purchase at Academy Sports, but his son, the Defendant, bought the items corresponding to the Walmart receipt, including

---

[1] I refer to Defendant's father as Del to avoid confusion with the Defendant.

a mobile phone and silicone lubricant. *Id.* The surveillance video also showed that an hour after Del's purchase at Academy Sports, Sorey and his girlfriend, Michele Zeisler, bought from the same store ammunition and items that can be used to make explosive devices—Sorey bought four pounds of Tannerite, and Zeisler bought fifty carbon dioxide cartridges. *Id.*

On January 15, 2020, law enforcement officers obtained warrants to search the residences of Del, Sorey, and Zeisler for evidence related to making explosive devices. *See* Docs. 24-4, 24-5. A state court judge found probable cause existed to search the residences based on an affidavit from Special Agent Andrew Giere. Doc. 24-4 at 8; Doc. 24-5 at 7. The affidavit included the information outlined in the preceding two paragraphs. In addition, the affidavit noted that Sorey had expressed "sovereign citizen beliefs" in previous contacts with law enforcement, and his Facebook posts also reflected anti-government and anti-law-enforcement beliefs. Doc. 24-3 at 6; Doc. 24-4 at 7. Special Agent Giere noted that he knew based on training and experience that "sovereign citizens have anti-government views" and "sometimes escalate to engaging in violence against the government and individuals representing the government using firearms and explosives." *Id.* The affidavit also reflected two Facebook posts connecting Sorey to his father: on January 14,[2] Sorey posted that he had just returned from Florida and was "looking for [his] dad" (who had died in the car accident two days earlier); and later that same day, another user posted that Sorey was looking for his father, who was last seen "in his sons [sic] pickup," and included a picture of a vehicle matching the one Del was driving at the time of the accident. Doc. 24-4 at 6-7; Doc. 24-5 at 5-6.

Sorey moves to suppress evidence seized from his and Zeisler's residences[3] during

---

[2] The affidavit states the Facebook post is dated "January 14, 2019," not 2020, but from context, the year 2019 appears to be a typographical error.

[3] Sorey's brief notes that he was living at Zeisler's residence at the time of the search and therefore, has standing to challenge the search of Zeisler's residence. The Government does not argue otherwise.

the execution of the search warrants, arguing that probable cause did not exist based on Special Agent Giere's affidavit. Sorey also argues that statements he made after the search must be suppressed as fruits of the poisonous tree. Neither party requested an evidentiary hearing and I determined that one was unnecessary. I held oral argument on the motion on August 7, 2020. Doc. 34.

## II. DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no [w]arrants shall issue, but upon probable cause . . . ." **U.S. Const. amend. IV**. In accordance with "[t]he Fourth Amendment's strong preference for searches conducted pursuant to a warrant," "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review"; "the duty of a reviewing court is simply to ensure that the [issuing judge] had a 'substantial basis for . . . conclud[ing]' that probable cause existed." ***Illinois v. Gates***, 462 U.S. 213, 236, 238-39 (1983) (last alteration in original) (quoting ***Jones v. United States***, 362 U.S. 257, 271 (1960)); *accord* ***United States v. Buchanan***, 574 F.3d 554, 561 (8th Cir. 2009). Probable cause exists when, "under the totality of circumstances, there is a fair probability [that] evidence of a crime will be found in a particular place" or that the requested search will "lead to the discovery of evidence." ***United States v. Faulkner***, 826 F.3d 1139, 1144, 1146 (8th Cir. 2016). "Not only may an issuing judge 'draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant, [the Eighth Circuit] has also recognized that law enforcement officers may make reasonable inferences . . . .'" ***United States v. Brackett***, 846 F.3d 987, 992 (8th Cir. 2017) (quoting ***United States v. Thompson***, 210 F.3d 855, 860 (8th Cir. 2000)). Probable cause requires a nexus between the items officers are searching for and the place or item to be searched. ***United States v. Johnson***, 848 F.3d 872, 878 (8th Cir. 2017). "Factors to consider in determining if a nexus exists include

3

'the nature of the crime and the reasonable, logical likelihood of finding useful evidence.'" *Id.* (quoting *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016)).

Sorey argues that the affidavit in support of the search warrants lacked probable cause. He argues the only evidence in the affidavit supporting he was involved in illegally manufacturing explosive devices "was that he had purchased legal items and allegedly expressed anti-government views." Doc. 24-1. But information in the affidavit also connects Sorey to the illegal explosive devices found at the scene of the accident: Sorey's father was driving the vehicle, and a Facebook post suggested that the vehicle involved in the accident belonged to Sorey; surveillance footage showed Sorey making a purchase that matched a receipt found at the scene of the accident; and surveillance footage showed Sorey and his girlfriend purchasing (legal) items that can be used to make (illegal) explosive devices an hour after Sorey's father bought items from the same out-of-state store, including carbon dioxide cartridges, which were used in the (illegal) IEDs found at the scene of the accident. Based on this evidence, the issuing judge had a "substantial basis" to find a "fair probability" that Del, Sorey, and Zeisler were all involved in making illegal explosive devices and that evidence could be found at their residences.[4] I recommend finding that the affidavit in support of the warrant established probable cause for the searches.

Even if I found probable cause lacking, I would not find suppression an appropriate remedy. When it is later determined that a warrant is not supported by probable cause,

---

[4] In his brief, Sorey purports to be making a "nexus" argument, but in support, he reiterates that nothing in the affidavit connects Sorey to illegal activity, rather than focusing on the connection between Sorey's residence and the illegal activity. Further, Sorey concedes that the information in the affidavit connecting Del to the illegal activity "support[ed] a search of the residence of Defendant's father." Doc. 24-1 at 6. At oral argument, Sorey conceded that his brief needlessly bifurcated an issue. Thus, I do not separately address whether a nexus existed to search Sorey's and Zeisler's residences.

4

evidence obtained from that warrant need not be excluded if officers reasonably relied in good faith on the judge's issuance of the warrant. *United States v. Carpenter*, 341 F.3d 666, 669 (8th Cir. 2003) (discussing the good-faith exception outlined in *United States v. Leon*, 468 U.S. 897 (1984)). Reliance on a warrant is unreasonable when probable cause is so lacking "as to render official belief in its existence entirely unreasonable." *Id.* at 670.[5] Here, as discussed above, I find that probable cause existed to search Sorey's and Zeisler's residences; thus, it was not "entirely unreasonable" for officers to believe probable cause existed. *See id.* 671-72 & 672 n.3. Thus, even if the warrant was invalid, the good-faith exception is applicable, and the evidence seized should not be suppressed.

### III. CONCLUSION

I respectfully recommend that the district court **deny** Defendant's motion to suppress evidence (Doc. 24).

Objections to this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59(b), and Local Criminal Rule 59, must be filed within fourteen days of the service of a copy of this Report and Recommendation; any response to the objections must be filed within seven days after service of the objections. A party asserting such objections must arrange promptly for the transcription of all portions of the record that the district court judge will need to rule on the objections. **LCrR 59**. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* **Fed. R. Crim. P. 59**. Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the

---

[5] The other instances in which the good-faith exception is inapplicable—when there has been a *Franks* violation, when the issuing judge "wholly abandoned his [or her] judicial role," or when the warrant itself lacks particularity—are not implicated here. *See id.* at 669-70, 674 (quoting *Leon*, 468 U.S. at 923).

findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**ENTERED** this 12th day of August, 2020.

                                                         */s/ Kelly K.E. Mahoney*
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa