IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. DARRELL SOREY, Defendant. | No. CR20-4048-LTS<br><br>**ORDER ON REPORT AND RECOMMENDATION** |

## I.  INTRODUCTION

This matter is before me on a Report and Recommendation (R&R) entered by Chief United States Magistrate Judge Kelly K.E. Mahoney. Doc. No. 35. Judge Mahoney recommends that I deny defendant Darrell Sorey's motion (Doc. No. 24) to suppress. Sorey has filed objections (Doc. No. 36) to the R&R and the Government has filed a response (Doc. No. 37).

## II.  BACKGROUND

### A.  *Procedural History*

On June 9, 2020, the Grand Jury returned an indictment (Doc. No. 2) charging Sorey with possession of a firearm by a drug user (Count 1), receipt and possession of an unregistered destructive device (Count 2) and making an unregistered destructive device (Count 3). On July 14, 2020, Sorey filed a motion to suppress evidence obtained during two searches. Judge Mahoney conducted a hearing on August 7, 2020, and issued her R&R on August 12, 2020. A jury trial is currently set for October 5, 2020. *See* Doc. No. 25.

*B.*     *Relevant Facts*

Judge Mahoney made the following findings of fact, which are not contested:

> On January 12, 2020, Defendant's father, Del Sorey, died in a rollover vehicle accident in Marion County, Iowa. Doc. 24-4 at 6; Doc. 24-5 at 5. At the scene of the accident, law enforcement officers found a pipe bomb, two improvised explosive devices (IEDs) made with carbon dioxide cartridges, two semi-automatic rifles, and assorted ammunition. *Id.* They also found receipts dated a few days prior from Academy Sports in Warner Robins, Georgia, and from Walmart in Daytona Beach, Florida. *Id.*
>
> Officers reviewed surveillance footage from the stores for the dates matching the receipts. *Id.* The footage showed that Del made the purchase at Academy Sports, but his son, the Defendant, bought the items corresponding to the Walmart receipt, including a mobile phone and silicone lubricant. *Id.* The surveillance video also showed that an hour after Del's purchase at Academy Sports, Sorey and his girlfriend, Michele Zeisler, bought from the same store ammunition and items that can be used to make explosive devices—Sorey bought four pounds of Tannerite, and Zeisler bought fifty carbon dioxide cartridges. *Id.*
>
> On January 15, 2020, law enforcement officers obtained warrants to search the residences of Del, Sorey, and Zeisler for evidence related to making explosive devices. *See* Docs. 24-4, 24-5. A state court judge found probable cause existed to search the residences based on an affidavit from Special Agent Andrew Giere. Doc. 24-4 at 8; Doc. 24-5 at 7. The affidavit included the information outlined in the preceding two paragraphs. In addition, the affidavit noted that Sorey had expressed "sovereign citizen beliefs" in previous contacts with law enforcement, and his Facebook posts also reflected anti-government and anti-law-enforcement beliefs. Doc. 24-3 at 6; Doc. 24-4 at 7. Special Agent Giere noted that he knew based on training and experience that "sovereign citizens have anti-government views" and "sometimes escalate to engaging in violence against the government and individuals representing the government using firearms and explosives." *Id.* The affidavit also reflected two Facebook posts connecting Sorey to his father: on January 14, Sorey posted that he had just returned from Florida and was "looking for [his] dad" (who had died in the car accident two days earlier); and later that same day, another user posted that Sorey was looking for his father, who was last seen "in his sons [sic] pickup," and included a picture of a vehicle matching the one Del was driving at the time of the accident. Doc. 24-4 at 6-7; Doc. 24-5 at 5-6.

Doc. No. 35 at 1–2 (footnotes omitted).

2

## III. APPLICABLE STANDARDS

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## IV. DISCUSSION

Sorey objects to three of Judge Mahoney's findings in the R&R. He first argues that Judge Mahoney improperly disregarded his argument regarding the lack of a nexus between the contraband the warrants sought and two of the residences that were searched, his and Zeisler's homes. Doc. No. 36 at 3. He asserts that he has not abandoned that argument, even though he focused his arguments during the hearing on the absence of probable cause for the warrants due to the lack of a connection between him and the evidence recovered at the scene of his father's accident. *Id.* Second, he argues that the warrants to search his and Zeisler's residences were not supported by probable cause because the affidavit supporting the warrants lacked sufficient evidence connecting him or Zeisler to the act of making illegal explosive devices. *Id.* at 3–5. Finally, he argues that the good faith exception does not apply to excuse the lack of probable cause. *Id.* at 5–6. Therefore, he asserts that all evidence obtained during the searches of his and Zeisler's homes, including statements he made, must be suppressed. *Id.* at 6.

In response, the Government argues that there was no need for Judge Mahoney to specifically address Sorey's nexus argument. Doc. No. 37 at 9–10. The Government contends that Judge Mahoney properly concluded that the evidence described in the affidavit was sufficient to connect Sorey and Zeisler to making illegal destructive devices. *Id.* at 8–9. Thus, because there was probable cause to believe that Sorey and Zeisler were connected to making illegal destructive devices, the need to search their homes, where any evidence related to those destructive devices was most likely to exist, was self-evident. *Id.* at 9–10. The Government also argues that even if the warrants were not supported by probable cause, the good-faith exception applies because it was not unreasonable for the officers to believe the warrant was valid. *Id.* at 12–13.

I agree with the Government that Judge Mahoney did not err by not more fully addressing Sorey's nexus argument in the R&R. Law enforcement officials and judges may make reasonable inferences in their respective duties of preparing affidavits for, and deciding to issue, warrants. *United States v. Augard*, 954 F.3d 1090, 1094–95 (8th Cir.

4

2020). An inference that evidence of making illegal destructive devices would most likely be at, or near, the accused maker's home is reasonable and justified. *See id.* Thus, the critical issues here are (1) whether the affidavit in support of the warrant provided probable cause to believe Sorey and Zeisler were involved in making, or procuring materials for, illegal destructive devices and (2) if not, whether the good-faith exception to the warrant requirement applies.

An affidavit in support of a search warrant must provide an issuing judge with "a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83 (1980)). Probable cause exists when, "under the totality of circumstances, there is a fair probability [that] evidence of a crime will be found in a particular place" or that the requested search will "lead to the discovery of evidence." *United States v. Faulkner*, 826 F.3d 1139, 1144, 1146 (8th Cir. 2016). "When the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citations omitted).

Based on my de novo review, I agree with Judge Mahoney that the affidavit in support of the warrants to search Sorey's and Zeisler's homes provided a substantial basis for finding probable cause. The affidavit outlined evidence showing that Sorey, his father, Del, and Zeisler had been travelling together out of state, that Sorey and Zeisler purchased materials while out of state that could be used to make the type of illegal explosive devices discovered at the scene of Del's fatal accident, and that Del was allegedly driving Sorey's vehicle at the time of his accident within days of returning home.[1] Although some evidence shows that Sorey did not know where his father was

---

[1] Del's fatal accident was on January 12, 2020. A receipt found at the scene of the accident showed that a purchase was made at a Walmart in Daytona Beach, Florida, on January 8, 2020. Surveillance camera footage from that store showed that Sorey made the purchase.

5

when the accident occurred, and Sorey claims his father abandoned him while they were out of state, the temporal proximity between these events is not so attenuated to preclude a finding of probable cause.[2] There was a fair probability that evidence related to illegal destructive devices would be discovered in Sorey's or Zeisler's homes.

Even if the warrants were not supported by probable cause, the exclusionary rule would not apply here due to the good-faith exception. Any inadequacy or mistake in the affidavit's information, or the judge's decision to issue a warrant, was not so great "as to render official belief in [the] existence [of probable cause] entirely unreasonable." *United States v. Carpenter*, 341 F.3d 666, 669 (8th Cir. 2003). Therefore, evidence from the searches should not be suppressed.

## V. CONCLUSION

For the reasons set forth herein:

1. Sorey's objections (Doc. No. 36) to the R&R (Doc. No. 35) are **overruled**;

2. I accept the R&R (Doc. No. 35) without modification, *see* 28 U.S.C. § 636(b)(1);

3. Pursuant to Judge Mahoney's recommendation, Sorey's motion (Doc. No. 24) to suppress is **denied**.

---

[2] Although it is unclear when Del returned to Iowa, Del's accident occurred one week after Sorey and Zeisler purchased the Tannerite and $CO_2$ cartridges in Georgia. One of the Facebook posts described in the affidavit indicates that Sorey returned to Iowa on January 14, 2020, two days after his father's accident.

6

**IT IS SO ORDERED.**

**DATED** this 10th day of September, 2020.

_____
Leonard T. Strand, Chief Judge